## JOHN M. BYRON v. ERNEST A. POPHAM.[1]

March 2, 1928.

No. 26,594.

**Verdict for plaintiff sustained.**

1. The evidence sustains the verdict that the property involved was the property of plaintiff's intestate at the time of her death.

**When witness had referred to certificates of deposit as money, new trial was not necessary because court in its charge made a similar reference.**

2. A reference to the certificate of deposit as money in the charge of the court is not cause for a new trial. All parties well understood that when either a witness or the court referred to money the certificate of deposit was meant.

**Rulings on admission of testimony.**

3. There was no reversible error in the rulings admitting or excluding testimony.

Executors and Administrators, 23 C. J. p. 1187 n. 64.
Gifts, 28 C. J. p. 673 n. 86.
Witnesses, 40 Cyc. p. 2508 n. 22; p. 2528 n. 32.

Defendant appealed from a judgment of the district court for Waseca county, Senn, J. Affirmed.

*Childress & Caswell,* for appellant.
*Gallagher, Madden & Gallagher,* for respondent.

HOLT, J.

Defendant appeals from the judgment. The action was in replevin for certain property alleged to have been owned by plaintiff's intestate at the time of her death, which occurred March 22, 1921. The property consisted of household goods, a certificate of deposit for $520.20, and registered bonds secured by real estate, each bond being for $500. The household goods were in use in the old home of decedent, which was also the home of defendant, her son, for

[1]Reported in 218 N. W. 163.

many years prior to her death. Defendant claimed these household goods were acquired from his father two years before the latter's death in 1911. The certificate of deposit was indorsed by the mother but cashed by defendant about two months after her death. He testified that she made a gift thereof to him shortly before her death. The four bonds were registered in the name of the deceased. Defendant claimed these bonds also as a gift, delivered to him by the mother. After her death he was appointed special administrator and procured the registration of the bonds in his name. The contention of plaintiff was that all this property was owned by Catherine Popham when she died, and that she did not deliver or give any part thereof to defendant. The jury found this property was the property of plaintiff's intestate.

Appellant contends that the evidence does not sustain the verdict. There was testimony from another son of decedent that the household goods were hers. Defendant does not claim title to these goods through the mother, but through a bill of sale from the father. He testified that he burned the bill of sale. The conflicting testimony of the brothers in respect to the ownership of the household goods made an issue for the jury. As to the certificate of deposit and the bonds, there is no direct testimony contradicting that of defendant that his mother delivered them to him as gifts. But there are inherent improbabilities and inconsistencies in his testimony which throw doubt upon his claim of title. The mother had several children, among them a crippled daughter living in St. Paul and with whom the mother at times made her home for considerable periods. Whether under these circumstances the mother would bestow such large gifts on this one son the jury might consider improbable. Defendant had access to the certificate and bonds. No one else was with deceased when she died. Defendant did show that the mother, about the same time that he received these bonds, also gave her son Reuben $2,000 of similar registered bonds. However there is this difference, that she indorsed the bonds to Reuben and herself took steps to have them registered in his name before she died, whereas the bonds defendant claimed bore no indorsement nor was there any attempt by her to change the registration. The burden was on

plaintiff to prove his intestate's ownership when she died of the property claimed. As to the certificate of deposit and the bonds it was practically conceded by defendant that they were owned by the mother until shortly before her death and that he claimed them solely as gifts from her. She was dead, and he could not testify as to conversations in connection with the alleged gift. No third party was present when he received the instruments, if he did receive them. When called for cross-examination defendant, after testifying that his mother was living with him when she died, was asked:

Q. "And did she have some money on deposit in the Elysian State Bank?" A. "She did." Q. "At the time of her death?" A. "She did." Q. "Do you know how much?" A. "Well, whatever those certificates call for. $700 is what I had." Q. "There was $700 that she had?" A. "Yes."

It turned out that the one certificate for $312 was paid before her death, and plaintiff abandoned claim to that. So the only one involved was the one above mentioned.

Defendant's subsequent testimony developed that he did not mean that the mother owned this certificate when she died, for he testified she gave it to him about two months before death; that she had it somewhere in the house; and that he continually thereafter carried it in his pocket for more than two months. But the trouble was he had given entirely inconsistent accounts when cited into the probate court to disclose what he knew about her property, stating that he had found the certificate in the vault of the bank after her death. So also in regard to the bonds defendant's testimony in this case varied with that given in the probate court. He now contended that the mother gave him those in January, whereas Reuben testified that he saw them in the mother's hands early in February, 1921, when he received his bonds. The mother had a perfect right to dispose of her property by gift or will to one child to the exclusion of others, but it is not probable that a mother would do so without some reason. Defendant may justly point to a reason for preference in that he was the one who remained in the old family home,

where the mother also for perhaps most of the time made her home after her husband's death. He could also claim the same right of preference from the father, since as a renter he remained on the farm and kept the house open for the father whenever he chose to make that his home. That might also explain the giving of the bill of sale of the household goods and personal property on the farm by the father. But there is no reasonable explanation, and none was attempted of the fact, if it be a fact, that this bill of sale was destroyed by defendant in 1911, about the time of the father's death —when, if ever, its importance as a muniment of title to the property would be apparent to one in the position defendant then was to the other heirs of his father. Defendant's story of a gift, though uncontradicted by direct testimony, was not inherently convincing and was impeached by prior inconsistent statements in court and by circumstances to such an extent that a jury issue was raised.

We see nothing in the charge of which defendant can rightfully complain. It is true the action did not involve money in specie, but when defendant took the stand he referred to the certificates of deposit as money. And it is clear that where the court used the word a similar meaning was intended.

Exceptions to certain evidence might at first blush appear well taken; but when the peculiar situation in which the issue of a gift presents itself is considered, it is obvious that collateral incidents and circumstances were of considerable aid, and the limit to which these should be received is within sound judicial discretion. We need refer only to the more outstanding of the objections urged. Reuben was permitted to state that the value of the property, other than the household goods, defendant claimed under the bill of sale from his father, was $3,000. It seems that this was not improper. If the bill of sale had merely covered some old household goods of little value it might readily be suggested that the instrument was of slight importance and might as well be burned. However if the property covered was of great value prudence would dictate care in preserving it.

Defendant was asked what he paid the mother when she gave him a deed to her interest in the farm, and he answered without objec-

tion "some over 2,000." And when the further question was asked and answered that he could not recollect whether it was cash, objection was made that it was not cross-examination. The court overruled the objection, but no further question on that subject was asked and no motion made to strike out the testimony given. The evidence elicited had but slight bearing. Plaintiff of course sought to establish that the bill of sale from the father to defendant never existed. Defendant claimed that he had received it but afterwards burned it. That he, defendant, appreciated the worth of instruments of transfer, plaintiff sought to prove by the fact that when he got one from his mother he immediately recorded it. Even had the objection been timely, there would have been no reversible error in the answer as to the consideration paid.

The last question to defendant on redirect examination was: "And now counsel asked you about that personal property belonging to your father's estate. They put up the same claim in the probate court that they do in here, didn't they?" The court sustained an objection that it was immaterial. Clearly there was no error in the ruling. The question did not call for anything in relation to the transaction between the father and defendant, or for any fact having a bearing upon the issue of a gift from the mother of the certificate or bonds.

The judgment is affirmed.

STONE, J. did not sit.